IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LISA M. LOTT, § | |
|     PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:07-CV-140-A |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF SOCIAL SECURITY, § | |
|     DEFENDANT. § | |

<u>FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER</u>

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

<u>FINDINGS AND CONCLUSIONS</u>

A.    STATEMENT OF THE CASE

Plaintiff Lisa M. Lott brings this action pursuant to Section 405(g) of the Social Security Act, Title 42 of the United States Code, for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act. Lott applied for disability benefits on May 4, 2004, alleging she has been disabled since November 18, 2003. (Tr. 61, 79). She met the insured status requirements at all times relevant to the administrative decision. (Tr. 26, 54).

The Social Security Administration denied Lott's application for benefits both initially and on reconsideration. Lott requested a hearing before an administrative law judge (the "ALJ"), and ALJ Jack W. Raines held a hearing on June 14, 2006, in Fort Worth, Texas. (Tr. 292). Lott was represented by counsel. On July 28, 2006, the ALJ issued a decision that Lott was not disabled because she had the residual functional capacity (RFC) to perform a modified range of light work activity,[1] including her previous work. (Tr. 15-22). The Appeals Council denied Lott's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 3).

B. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). At the third step, disability will be found if the claimant's impairment or combination

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* § 404.1520(d). Fourth, if disability cannot be found on the basis of a listing alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198.

A denial of disability benefits is reviewed to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* Conflicts in the evidence are for the Commissioner, not the court, to resolve. *Masterson*, 309 F.3d at 272. The court will not re-weigh the evidence, try questions *de novo,* or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Id.*; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.  ISSUES

Lott presents the following complaints as grounds for relief:

1. The Commissioner's decision reflects a misunderstanding of Lott's condition;

2. The ALJ did not properly weigh the opinions of Lott's treating physician; and

3. The ALJ erred in the assessment of Lott's credibility.


D.  ADMINISTRATIVE RECORD

1.  Medical History

The medical evidence in the record provides the following information about Lott's impairments: After Lott complained of pain, stiffness, and fatigue during a check-up in 2003, her treating physician made a differential diagnosis of fibromyalgia.[2] (Tr. 101-08). Lott reported worsening fatigue over the past several years that eventually caused her to quit work. (Tr. 149).

Lott sought treatment with the Fibromyalgia and Fatigue Center in November 2004 for complaints of fatigue, neck pain, head pain, low back pain, irritable bowel syndrome, and problems with mental clarity. (Tr. 176). She exhibited 18 of 21 tender points. (Tr. 177). Diagnoses included fibromyalgia and chronic fatigue syndrome.[3] (Tr. 177). IV therapy was administered, (Tr. 174), but

---

[2] Fibromyalgia refers to pain and stiffness in the muscles and joints that is either diffuse or has multiple trigger points. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 711 (31ST ed. 2007).

[3] The Centers for Disease Control and Prevention (CDC) requires that patient satisfy two criteria in order to receive a diagnosis of chronic fatigue syndrome:

> 1. Have severe chronic fatigue of six months or longer duration with other known medical conditions excluded by clinical diagnosis; and
> 2. Concurrently have four or more of the following symptoms: substantial impairment in short-term memory or concentration; sore throat; tender lymph nodes; muscle pain; multi-joint pain without swelling or redness; headaches of a new type, pattern or severity; unrefreshing sleep;

Lott reported no decrease in her symptoms. (Tr. 170). She continued her treatment at the Center through August 2005, but with no significant improvement. (Tr. 264-91).

Lott began seeing Judy Yates, M.D., as her primary care physician in December 2005. (Tr. 224). Yates noted that Lott had been diagnosed with fibromyalgia, chronic fatigue, hypothyroidism, hypertension (well-controlled), and irritable bowel syndrome. Yates recommended that Lott lose weight and exercise, and explained to her that exercise would help her pain. Lott was encouraged to try swimming. (Tr. 225). In February 2006, Yates addressed Lott's plans to become pregnant, and again advised that Lott lose weight and increase her exercise. (Tr. 221).

Lott also consulted a specialist in sleep disorders because of the poor quality of her sleep. (Tr. 221). Margaret Mike, M.D., tested Lott in March 2006, and diagnosed obstructive sleep apnea. (Tr. 232-33). Mike prescribed the use of a continuous positive airway pressure (CPAP) system and sleeping pills to address Lott's disruptive sleep. (Tr. 229, 233, 242).

Lott underwent a behavioral medicine evaluation with Richard Vera, M.D., on March 29 and April 13, 2006. (Tr. 201). Lott exhibited some mild pain behavior on examination, (Tr. 207), and she complained that pain had a significant negative impact on her life. She rated her pain during the April 2006 evaluation as a 3 on a scale of 10 (with 10 being extreme pain), but her pain usually averaged 6 out of 10. She also reported that her pain worsened as the day progressed. (Tr. 202). After examining Lott, Vera's impressions included chronic muscular pain and depression. (Tr. 207).

---

and post-exertional malaise lasting more than 24 hours.

CENTERS FOR DISEASE CONTROL AND PREVENTION, CHRONIC FATIGUE SYNDROME: DEFINITION (May 3, 2006), http://www.cdc.gov/cfs/cfsdefinition.htm.

Vera opined that Lott met the criteria for a pain disorder, which suggested that stress could exacerbate Lott's level of pain. (Tr. 203). He recommended outpatient physical and behavioral therapy. (Tr. 203).

Yates completed a medical source statement dated May 23, 2006, in which she opined that Lott could stand or walk for fifteen minutes continuously for a total of one hour during a standard eight-hour day, and she could sit for thirty minutes continuously for a total of two hours during a standard work day. (Tr. 213). Yates opined that Lott would need to rest for more than four hours during the workday because of pain and fatigue. (Tr. 213). Yates also limited Lott to lifting no more than five pounds occasionally, and found Lott was precluded from crawling, bending, stooping, kneeling, or climbing. Lott's ability to balance was not significantly restricted. (Tr. 214). Yates based her assessment on a diagnosis of chronic myofascial pain syndrome.[4] (Tr. 214-15).

2. Administrative Hearing

Lott testified that she was born August 11, 1979. (Tr. 296). She was thirty hours away from earning a college degree, but was no longer enrolled in school. (Tr. 297). She had most recently worked as a sales representative for Wells Fargo, but quit because of fatigue and muscle pain. (Tr. 298).

Lott testified that she usually slept late and had a hard time getting up in the morning. (Tr. 299). She watched television or used her computer during the day. Lott testified that her husband did most of the housework, but she could unload the dishwasher and do some laundry. (Tr. 300).

---

[4] According to the Centers for Disease Control, fibromyalgia may also be referred to as myofascial pain syndrome or fibromyositis. CENTERS FOR DISEASE CONTROL AND PREVENTION, CHRONIC FATIGUE SYNDROME: GLOSSARY (May 3, 2006), http://www.cdc.gov/cfs/cfsglossary.htm.

She went to bed at 10:00 or 11:00 p.m., but also napped for up to an hour once or twice a day. Lott occasionally visited her neighbor or her mother, and was also exercising three times a week with a personal trainer. (Tr. 299-300). She could shop for a few items, but her husband did most of the grocery shopping. (Tr. 300, 304). She slept a lot, but testified that her sleep was not restful even with the use of medication. (Tr. 302). Increasing her activity during the day also increased her fatigue and pain levels. (Tr. 304). Although she has tried different medications and therapies, none have provided relief. (Tr. 301-02).

Vocational expert Donna Humphries summarized Lott's past relevant work experience as follows: sales clerk, which was light and semi-skilled activity; retail sales assistant manager, which was light and skilled activity; auto parts counter clerk, which was also light and skilled work; customer service representative, which was a sedentary, skilled position; and customer service representative, which was also a sedentary, skilled position. (Tr. 305). The ALJ asked Humphries to consider an individual of Lott's age, education, and vocational history with the following limitations:

> They will lift and carry occasionally 20 pounds, lift and carry frequently ten pounds, stand and walk at least six hours in an eight-hour day, sit about six hours in an eight-hour day, no postural limitations, no manipulative limitations, no visual or communication limitations, no working around excessive fumes, odors, dusts, gasses, or poor ventilation.

(Tr. 305-06). Humphries testified that a person with these limitations could perform all of Lott's past relevant work as she actually performed it or as customarily performed in the national economy. (Tr. 306).

3. ALJ Decision

The ALJ found that Lott was insured for purposes of disability insurance benefits and that she had not engaged in substantial gainful activity since her alleged onset date. In addition, the ALJ found that Lott's chronic fatigue constituted a severe impairment; however, he found that Lott had no impairment or combination of impairments meeting or equaling a listed impairment, including the listings for musculoskeletal, immune system, and mental disorders. (Tr. 17, 19).

Assessing Lott's residual functional capacity, the ALJ found Lott capable of occasionally lifting and carrying up to twenty pounds; standing or walking for up to six hours in an eight-hour workday; and sitting for up to six hours during the workday. (Tr. 19). The ALJ found no postural or manipulative limitations, but did find that Lott should avoid excessive fumes, odors, chemicals, or gases. He also found that she was capable of sustained work from a mental standpoint, and experienced only mild restriction in her activities of daily living, social functioning, and concentration, persistence or pace. (Tr. 19). Based on Lott's description of her previous work and the vocational expert's testimony, the ALJ found Lott was capable of performing her past relevant work, (Tr. 21-22), and concluded that Lott was not disabled. (Tr. 22).

E. DISCUSSION

Lott contends that the ALJ failed to fully and fairly develop the medical record, which resulted in the ALJ analyzing the record based on misconceptions about the nature of fibromyalgia. Lott asserts that the ALJ should have obtained the services of a medical expert to assist him in understanding her condition, and she argues that the medical errors in the decision, together with

the ALJ's election to forego assistance of a medical expert, justify reversal.

Although an ALJ may ask for the opinion of a medical expert at a hearing, it is not mandatory. *See* 20 C.F.R. § 404.1527(f)(2)(iii). But an ALJ does have a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). If the ALJ does not satisfy this duty, the decision is not substantially justified; however, reversal is appropriate only if the claimant can demonstrate prejudice. *Id*.

Lott complains that the ALJ found that she did not have fibromyalgia even though treating sources diagnosed fibromyalgia and myofascial pain syndrome and the record is replete with references to that diagnosis. Lott relies on three sentences in the ALJ's decision:

> She has been diagnosed with fibromyalgia. However, her rheumatoid factor in July 2003 was 5.9 and her ANA was negative. X-rays of both hands and the cervical and lumbar spine were also negative.

(Tr. 17)(citations omitted). Lott considers these sentences "medical non sequiturs" on the ground that fibromyalgia is not amenable to laboratory testing or x-rays, while conversely, she demonstrated 18 of 21 diagnostic trigger points indicative of fibromyalgia. Lott asserts that a medical expert was needed to prevent the ALJ from relying on medical fallacies.

Fibromyalgia is recognized as an elusive condition that does not lend itself to objective testing. *See Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2nd Cir. 2003); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). A review of the ALJ's decision also lends support to Lott's position that the ALJ either rejected the diagnosis of fibromyalgia or failed to appreciate the manner in which it may impact a person's ability to engage in substantial gainful activity. The ALJ devoted two pages to the summary of Lott's various diagnostic tests, treatment records, and progress reports,

including Lott's treatment at the fibromyalgia center and positive findings of 18 tender points, but then identifies Lott's only severe impairment as one of chronic fatigue and elsewhere refers to her affliction as chronic fatigue syndrome. He does not identify fibromyalgia as a severe impairment or otherwise refer to Lott as a fibromyalgia sufferer despite uncontradicted medical evidence that she has this impairment. (Tr. 17-19)

Merely carrying the diagnosis of fibromyalgia does not mandate a finding of disability, but taken as a whole, the ALJ's decision does not indicate any valid basis for rejecting reports from Lott's treating sources that she suffered from fibromyalgia, which calls into doubt the existence of substantial evidence to support the ALJ's assessment of the opinion evidence, the assessment of Lott's credibility, and the ultimate decision to deny benefits. *See Green-Younger v. Barnhart*, 335 F.3d at 107-08 (awarding benefits because treating physician's opinion that claimant's fibromyalgia was disabling was entitled to controlling weigh); *Sarchet*, 78 F.3d at 307 (recognizing that fibromyalgia is not always disabling, but requiring logical bridge between evidence about claimant's impairment and unfavorable result). Before evaluating whether the remainder of the administrative decision is supported by substantial evidence and consistent with applicable law, the court needs some assurance that the ALJ had a correct understanding of the nature of Lott's impairments. *See Green-Younger v. Barnhart*, 335 F.3d at 108-09; *Sarchet*, 78 F.3d at 307-08. Lott has demonstrated that the ALJ failed to fully and fairly develop the record relevant to her medical condition, and in failing to appreciate the nature of Lott's impairments, reached a decision that is not consistent with the substantial evidence.

## RECOMMENDATION

It is recommended that the decision of the Commissioner be reversed and remanded for further development consistent with these proposed findings of fact and conclusions of law.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until April 10, 2008. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until April 10, 2008, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED MARCH 20, 2008.

　　　/s/　Charles Bleil　　　　　　　　
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE